UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN THE MATTER OF THE COMPLAINT )
OF MICHAEL WIENOLD AND BCW )
PARTNERS, LLC, )
                                     )     No. 1:24-CV-10400
             Plaintiffs, )
                                       )     Judge Edmond E. Chang
             v. )
                                         )
JHONATHAN HOLDER GALVEZ VARGAS,)
                                       )
             Respondent. )

MEMORANDUM OPINION AND ORDER

Michael Wienold and BCW Partners, LLC, filed this lawsuit to limit their lia-bility for an apparent tragic maritime accident that occurred off the coast of Ecuador, resulting in the deaths of two crew members and serious injury to the sole surviving crew member, Jhonathan Holder Galvez Vargas. R. 1, Compl.[1] Vargas moves to dis-miss the Complaint for failure to comply with the six-month filing deadline under the Limitation of Liability Act, 46 U.S.C. § 30501. R. 15, Mot. to Dismiss. The motion is granted.

## I. Background

In evaluating the motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Michael Wienold and BCW Partners are the alleged owners of a 2019

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number. This Court has federal question subject matter jurisdiction over this case under 28 U.S.C. § 1331.

Kingfisher 3425GFX powerboat.[2] Wienold arranged to have the boat transported from Peru to Mexico for a fishing tournament. Compl. ¶¶ 4, 9. Three sailors crewed the boat, including Vargas. *Id.* ¶¶ 11. During the voyage, near Plata Island, Ecuador, the boat capsized and sank after encountering a storm. *Id.* ¶¶ 11, 12. Two crew members (whose names are not provided) died, but Vargas alleges that he survived by clinging to floating debris until he was rescued after two days at sea. *Id.* ¶ 12; R. 1-1, Compl. Exh. A ¶ 28.

The pre-suit correspondence between the parties is crucial to deciding the motion. On March 29 and June 20, 2023, Vargas sent letters via FedEx mail and email first to Wienold (the March letter) and then to both Wienold and BCW Partners (the June letter) about his legal claims for personal injuries from the incident. R. 16-2, Mot. to Dismiss, Exh. B; R. 16-3, Mot. to Dismiss, Exh. C. On April 1, 2024, Vargas filed a complaint against Wienold and BCW Partners in the Circuit Court of Cook County, seeking damages for negligence, vessel unseaworthiness, and maintenance and cure. Compl. ¶ 2; *see* Compl. Exh. A (amended complaint filed July 17, 2024). The state court complaint was served on BCW Partners on April 17, 2024. Compl. ¶ 25.

Almost six months later, on October 15, 2024, Wienold and BCW Partners sued in federal court to limit their liability under the Limitation of Liability Act, 46 U.S.C. § 30501, and moved for this Court to issue notice of the federal complaint, order a monition period (that is, a time period limiting when claims may be filed), and

---

[2]Both Wienold and BCW Partners deny that BCW Partners is an owner of the boat, *see* R. 20, Minute Entry 11/22/24; R. 19-2, Wienold Decl. ¶¶ 18–19, but the Court need not resolve this dispute to decide the motion to dismiss.

restrain the prosecution of claims outside of this Court. *See* Compl.; R. 5, Mot. for Order. Vargas now moves to dismiss the federal court Complaint because it was not filed within six months of when he first gave Wienold and BCW Partners notice of his claim. Mot. to Dismiss ¶ 1; *see* 46 U.S.C. § 30529.[3]

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[4] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). These allegations

---

[3]As addressed further below, Vargas makes this motion under both Civil Rule 12(b)(1) for lack of subject matter jurisdiction and Civil Rule 12(b)(6) for failure to state a claim. Mot. to Dismiss ¶ 1.

[4]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

"must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

A Rule 12(b)(1) motion tests whether the Court has subject matter jurisdiction, *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009); *Long v. ShoreBank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999), whereas a Rule 12(b)(6) motion tests the sufficiency of the complaint, *Hallinan*, 570 F.3d at 820; *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990).  In order to survive a Rule 12(b)(1) motion, the petitioner must establish that the district court has subject-matter jurisdiction. *United Phosphorous, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2011), *overruled on other grounds*, *Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012). "If subject matter jurisdiction is not evident on the face of the complaint, [then] the ... Rule 12(b)(1) [motion is] analyzed [like] any other motion to dismiss, by assuming for the purposes of the motion that the allegations in the complaint are true." *Id.*

### III. Analysis

Under the Limitation of Liability Act, the "owner of a vessel may bring a civil action in a district court of the United States for limitation of liability." 46 U.S.C. § 30529(a). The Act allows the vessel's owner to limit its liability to the value of the vessel and the pending freight "from any embezzlement, loss, or destruction of any property, goods, or merchandise shipped or put on board the vessel, any loss, damage, or injury by collision, or any act, matter, or thing, loss, damage, or forfeiture, done,

4

occasioned, or incurred, without the privity or knowledge of the owner." 46 U.S.C. § 30523(b). Put another way, if the vessel's owner was not in privity or had no knowledge of the damage-causing act, then the liability of the owner is limited to the vessel's value. But to benefit from that limitation, the "action *must* be brought within 6 months after a claimant gives the owner written notice of a claim." 46 U.S.C. § 30529(a) (emphasis added). "Once properly filed, the district court retains exclusive jurisdiction over the matter and all claims against the shipowner must cease." *Complaint of McCarthy Bros. Co./Clark Bridge*, 83 F.3d 821, 826 (7th Cir. 1996) (citing 46 U.S.C. § 30529; *Metro. Redwood Lumber Co. v. Doe*, 223 U.S. 365 (1912)).

Vargas moves to dismiss Wienold and BCW Partners' federal Complaint because, he argues, it was not filed within six months after Vargas gave notice of his claims. Mot. to Dismiss ¶ 1. Vargas contends that the clock started running on March 29, 2023 or (at the latest) June 20, 2023, when he sent letters to Wienold and then Wienold and BCW Partners about his claim. *Id.* ¶¶ 33–35. Wienold and BCW Partners respond that Vargas did not give notice of the claim until April 17, 2024—when Vargas served BCW Partners with the state court complaint—because the letters do not satisfy the written-notice requirements. R. 19, Pls.' Resp. at 5–9. They also argue that, even if the content of the letters provided sufficient notice of the claim, Wienold and BCW Partners did not actually receive them, and *receipt* starts the six-month clock under the Limitation of Liability Act and Rule F of the Federal Rules of Civil Procedure's Supplemental Rules for Admiralty and Maritime Claims. *Id.* at 9–11.

## A. Jurisdiction

Vargas advances the dismissal motion under both Civil Rule 12(b)(6), for failure to state a claim, and Civil Rule 12(b)(1), for lack of subject matter jurisdiction, arguing that the Seventh Circuit caselaw is unclear as to whether the six-month deadline is a jurisdictional requirement. Mot. to Dismiss ¶¶ 18–21. Wienold and BCW Partners do not address this issue in their brief. *See* Pls.' Resp. Vargas cites *Joyce v. Joyce*, 975 F.2d 379, 383 (7th Cir. 1992), where the Seventh Circuit upheld a district court's dismissal for lack of subject matter jurisdiction because the Limitation of Liability Act's lack of "privity or knowledge" requirement was not met. Mot. to Dismiss ¶¶ 19–20. But as the Seventh Circuit remarked later in *McCarthy Brothers*, dismissal for lack of subject matter jurisdiction in that case was "likely inaccurate," 83 F.3d at 827 n.1, and *Joyce* itself expressed skepticism that there was a jurisdictional flaw, 975 F.2d at 383 n.3, 386 n.7. In *McCarthy Brothers*, the Seventh Circuit explained that dismissal was appropriate because "the shipowner fail[ed] to meet one of the statutory prerequisites, and that is true whether or not we call it jurisdictional." *McCarthy Bros.*, 83 F.3d at 827 n.1; *see Joyce*, 975 F.2d at 386 n.7. Although the Seventh Circuit has not addressed whether the six-month filing deadline is jurisdictional, other Circuits have held that it is not. *See Martz v. Horazdovsky*, 33 F.4th 1157, 1163 (9th Cir. 2022); *In re Bonvillian Marine Service, Inc.*, 19 F.4th 787, 794 (5th Cir. 2021). This is consistent with the Supreme Court's holding that procedural rules that are only *time* bars are jurisdictional "only if Congress has clearly stated as much." *United States v. Wong*, 575 U.S. 402, 409 (2015) (cleaned up). Nothing in the

provisions of the Limitation of Liability Act suggest that the six-month limitations period is a requirement for subject matter jurisdiction, rather than a timing precondition to filing suit, akin to a statute of limitations. So the proper vehicle to evaluate the six-month period is not a motion to dismiss for lack of subject matter jurisdiction under Civil Rule 12(b)(1).

That leaves Vargas's motion under Civil Rule 12(b)(6) for failure to state a claim. But given that the statute of limitations is an affirmative defense, it ordinarily need not be pleaded around. *See, e.g.*, *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012); *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009). Ordinarily, the proper way to raise this argument would be through a Civil Rule 12(c) motion for judgment on the pleadings, or an early motion for summary judgment. *See id.* But the Limitation of Liability Act's six-month deadline is arguably different, as a formal matter, than an affirmative defense based on a statute of limitations because the deadline is written directly into the statute and into Rule F of the Supplemental Rules for Admiralty and Maritime Claims as a precondition to invoking the Act. 46 U.S.C. § 30529(a); Fed. R. Civ. P. Supp. R. F(1). Both the statute and the rule require compliance with the limitation in the first instance to support the viability of the petition. *Id.*; *see McCarthy Bros.*, 83 F.3d at 827 (describing the six-month deadline as one of the "statutory prerequisites" for shipowners to take advantage of the Limitation of Liability Act). And ultimately, the owners do not argue that the issue should not be decided at this stage, and indeed did not brief the issue of dismissal based on the proper characterization of lack of jurisdiction versus failure to state a claim at all.

*See* Pls.' Resp. Whether the motion is decided as a Civil Rule 12(b)(6) motion, or instead a motion for judgment on the pleadings or summary judgment, the Court will give Wienold and BCW Partners—the non-movants—the benefit of reasonable inferences. But their arguments still fail as described below.

### B. Adequacy of Notice

The Limitation of Liability Act does not say in any detail what content a claimant must provide when he "gives the owner written notice of a claim." *See* 46 U.S.C. § 30529(a); *McCarthy Bros,* 83 F.3d at 829. The Seventh Circuit has held that "in the typical case, the filing of a complaint serves as written notice of a claim." *McCarthy Bros.*, 83 F.3d at 829. But the Seventh Circuit also considers "a letter sent to a shipowner by a claimant … sufficient to trigger the six-month period if (1) it informs the shipowner of an actual or potential claim (2) which may exceed the value of the vessel (3) and is subject to limitation." *Id.* (citing *Doxsee Sea Clam Co. v. Brown*, 13 F.3d 550, 554 (2d Cir.1994)). This written notice "must reveal a 'reasonable possibility' that the claim made is one subject to limitation." *Id.* (quoting *Complaint of Tom-Mac, Inc.*, 76 F.3d 678, 683 (5th Cir. 1996)).

Given the debate over the sufficiency of the two pre-suit letters, it is worth excerpting most of the letters' text here. Both letters do refer to the claimant's "serious injury" and the alleged negligence of the owners. Mot. to Dismiss, Exhs. B, C, Vargas's March 29 letter, addressed to Wienold and mailed by his attorney, says in pertinent part:

> This letter is to advise you that our law firm has been retained to represent Jhonatan Galvez Vargas in a cause of action for personal injuries sustained as

a result of the occurrence referenced above. Our investigation and information reveal that Jhonatan Galvez Vargas and two other men were hired to transport the above-referenced vessel referenced above from Peru to Mexico for use by you in a fishing tournament. We also understand that you are the registered owner of said vessel and that it was insured by Chubb Seguros Mexico, S.A. at the time of the occurrence.

As you likely know, the vessel encountered mechanical deficiencies and rough weather in its voyage to Mexico, which resulted in the death of two crew members onboard and serious injury to Mr. Galvez Vargas. We contend the underlying incident and Mr. Galvez Vargas' injuries were the result of negligence and the unseaworthy condition of the vessel. We will, therefore, look to you—as the vessel owner—to respond in damages.

Mot. to Dimiss, Exh. B. Vargas's June 20 letter, addressed to Wienold and BCW Partners, and likewise mailed by his attorney, says in relevant part:

This letter constitutes our second attempt to reach you on the above-referenced legal claim. As we advised in writing to you on March 29, 2023, our law firm represents Jhonatan Galvez Vargas in a cause of action for personal injuries he sustained as a result of the occurrence referenced above. Our investigation and information reveal that Jhonatan Galvez Vargas and two other crewmembers were hired to transport the above-referenced vessel from Peru to Mexico at your direction. We understand that you are the registered owner of said vessel and that the vessel was insured by Chubb Seguros Mexico, S.A. at the time of the occurrence.

As you know, the unseaworthy condition of the vessel resulted in serious injuries to Mr. Galvez Vargas and the death of the other two crewmembers onboard. We contend the underlying incident and Mr. Galvez Vargas' injuries were the result of negligence and the unseaworthy condition of the vessel. We look to you—as the vessel owner—to respond in damages.

We have been in contact with an adjuster for Chubb Seguros de Mexico, S.A. Chubb has indicated that any notice of a claim needs to come directly from you as their insured. Despite our previous correspondence, you have yet to notify Chubb of Mr. Galvez Vargas' claim. We also understand that Chubb has tried

9

to contact you directly on this matter to no avail. Attached is a copy of corre-
spondence we received from Chubb.

…
**Please be further advised that if we do not hear from you, your lawyer,
or the vessel insurer within the next 30 days, we will proceed with
filing a lawsuit on Mr. Galvez Vargas' behalf.**

Mot. to Dismiss, Exh. C at 1–2 (emphasis in original). Wienold and BCW Partners

argue that neither letter satisfies the Seventh Circuit's test, because the letters them-

selves do not state the value of the vessel or the value of Vargas's claim. Pls.' Resp.

at 6.

But the owners demand too much of the notice of the claim. The letters satisfy

the statutory requirement—as interpreted by the Seventh Circuit—for giving written

notice of a claim. First, the letters inform Wienold and BCW Partners "of an actual

or potential claim." *See McCarthy Bros.*, 83 F.3d at 829. The first letter explicitly

refers to a potential "cause of action," warning that a "law firm has been retained to

represent Jhonatan Galvez Vargas in a cause of action for personal injuries sustained

as a result of the occurrence referenced above" and spells out the claims for which

Vargas seeks damages: "[w]e contend the underlying incident and Mr. Galvez Vargas'

injuries were the result of negligence and the unseaworthy condition of the vessel.

We will, therefore, look to you—as the vessel owner—to respond in damages." Mot. to

Dismiss, Exh. B at 1. So does the second letter. *See* Mot. to Dismiss, Exh. C at 1. The

second letter also gives an explicit timeframe, making crystal clear that a lawsuit is

imminent: in the absence of a response "within the next 30 days, we will proceed with

filing a lawsuit on Mr. Galvez Vargas' behalf." *Id.* at 2. Unlike the correspondence in

10

*McCarthy Brothers*, these letters informed Wienold and BCW Partners that Vargas had a potential claim against them, and that Vargas intended to take imminent legal action by filing a lawsuit. *See McCarthy Bros.*, 83 F.3d at 829.

Second, the letters informed Wienold and BCW Partners that Vargas's claim "may exceed the value of the vessel." *See McCarthy Bros.*, 83 F.3d at 829. The first letter informed Wienold that Vargas had suffered "serious injury": "the vessel encountered mechanical deficiencies and rough weather in its voyage to Mexico, which resulted in the death of two crew members onboard and serious injury to Mr. Galvez Vargas." Mot. to Dismiss, Exh. B at 1. The second letter repeated the assertion: "[a]s you know, the unseaworthy condition of the vessel resulted in serious injuries to Mr. Galvez Vargas and the death of the other two crewmembers onboard." Mot. to Dismiss, Exh. C at 1. Both letters also explicitly stated that Vargas sought "damages" from Wienold and BCW Partners for his injuries, and outlined the legal theories that Vargas would pursue: negligence and vessel unseaworthiness. Mot. to Dismiss, Exhs. B, C.

On the value of the vessel (remember that the Act is triggered if the asserted claim exceeds the value of the vessel), in this federal court case, Wienold submitted a declaration stating that the "Vessel was never recovered by any person or personnel" and the "reasonable market value of the Vessel as of June 2, 2022 was $0.00." R. 12, Wienold Decl. ¶¶ 2–3. Even though the vessel's value was in fact zero after the accident, Wienold and BCW Partners argue that because the *letters* do not state that the value of the vessel is zero dollars and do not specify the value of Vargas's claim,

11

Vargas's description of his claim for "serious injury" (even in the context of two deaths) was insufficient. Pls.' Resp. at 7–8.

Wienold and BCW Partners ask too much of the written-notice requirement. Nothing in the Seventh Circuit's opinion in *McCarthy Brothers* requires that the claimant set forth an exact valuation of the vessel or an exact valuation of damages. Indeed, it would be unreasonable to expect the claimant to know with certainty either the exact value of the vessel (although here it happens to be zero) or the exact value of the legal claims at just the notice-giving stage. Given that the value of the vessel in this case *is* indeed zero (a fact of which Wienold was aware because he never re-covered his boat and it never arrived for his fishing tournament), a claim for "serious injury" because of negligence and vessel unseaworthiness as identified in the letters is a claim that—by definition—"may exceed the value of the vessel." *See McCarthy Bros.*, 83 F.3d at 829. Even viewing the evidence in the Plaintiffs' favor, no reasonable trier of fact could find otherwise.

Third, the letters raised the reasonable possibility that Vargas's claim would be "subject to limitation," meaning that the boat was a "vessel" covered by the Limitation of Liability Act. *See McCarthy Bros.*, 83 F.3d at 829 (citing *Complaint of Tom-Mac, Inc.*, 76 F.3d at 683). Vargas's letters identified the vessel (2019 King Fisher 3425GFX) and the vessel hull ID (QBSY4920T819), clearly raising the reasonable possibility that Vargas's claim would be covered by the Limitation of Liability Act. *See* Mot. to Dismiss, Exhs. B, C.

12

This view of the pre-suit letters is consistent with the purpose of the Act's no-tice requirement. In *McCarthy Brothers*, the Seventh Circuit explained that purpose: the "real danger in failing to hold claimants to a fairly high level of specificity in letters is that the claimant may nullify a shipowner's right to file a limitation action by sending a cryptic letter and then waiting more than six months to file a complaint." *McCarthy Bros.*, 83 F.3d at 829–30. Vargas's letters were not at all "cryptic." *See id.* They informed Wienold and BCW Partners that two crew members had died and Var-gas himself had suffered *serious injury* after the boat encountered mechanical defi-ciencies and rough waters, and that Vargas intended to file a *lawsuit* within 30 days if he did not receive a response from the second letter. *See* Mot. to Dismiss, Exhs. B, C. Even viewing the evidence in the owners' favor, no reasonable factfinder could conclude that a letter that explicitly threatens a *lawsuit* would lull an owner into sleeping on their rights under the Act. Indeed, the Seventh Circuit also instructs that "the six-month period shall be strictly construed and that ambiguities shall be re-solved against the shipowner." *McCarthy Bros.*, 83 F.3d at 829. It is worth noting too that the Seventh Circuit did *not*—as Wienold and BCW Partners erroneously argue by misquoting the text of the *McCarthy Brothers* opinion—hold that the written no-tice must "unambiguously" set forth the three required pieces of information. *See* Pls.' Resp. at 1 (erroneously quoting *McCarthy Bros.*, 83 F.3d at 829). As the Second Cir-cuit explained in a case cited approvingly by the Seventh Circuit, "the burden to seek clarification falls upon" the *shipowner* once informed by a claimant about the reason-able possibility that he will bring a claim exceeding the value of a vessel. *Doxsee Sea*

13

*Clam Co., Inc. v. Brown*, 13 F.3d 550, 554–55 (2nd Cir. 1994); *see McCarthy Bros.*, 83 F.3d at 829. Considering the statute's requirement to give written notice of a claim, the Seventh Circuit's test for written notice, and the policies animating the notice requirement, both letters gave sufficient notice to Wienold and BCW Partners about Vargas's claim to trigger the Act.

### C. Receipt of Notice

Wienold and BCW Partners next argue that even if the content of the letters provided sufficient notice, Wienold did not actually receive and read them, meaning that they did not trigger the six-month deadline for filing a complaint in district court. Pls.' Resp. at 9–11. Just as with the content of the notice, the statute is sparse on instructions for delivery of the notice, saying only that the "action must be brought within 6 months after a claimant *gives* the owner written notice of a claim." 46 U.S.C. § 30529(a) (emphasis added). Rule F of the Federal Rules of Civil Procedure's Supplemental Rules for Admiralty and Maritime Claims also concisely describes the notice requirement, though with a different term: "[n]ot later than six months after *receipt* of a claim in writing, any vessel owner may file a complaint in the appropriate district court." Fed. R. Civ. P. Supp. R. F(1) (emphasis added). Neither party identifies, and the Court is not aware of, any Seventh Circuit decision addressing delivery of notice under the Limitation of Liability Act or the difference in wording (gives versus receipt) between the statute and Rule F. *See* Mot. to Dismiss; Pls.' Resp.

Both of the pre-suit letters were sent to the Prospect Heights, Illinois, address listed on the boat's Bill of Sale, the boat's Florida Department of Highway Safety and

14

Motor Vehicles registration, and the boat's insurance policies. Mot. to Dismiss, Exhs. B, C; R. 16-4, De La Cruz Decl., Exh. D; R. 16-5, De La Cruz Decl., Exh. E; R. 21-1, Reply, Exh. A; R. 21-2, Reply, Exh. B. Wienold contends, however, that he did not receive the physical letters because he no longer regularly lives or visits there. R. 19-2, Wienold Decl. ¶¶ 2–5. Both letters were also emailed to pureconstruction2009@gmail.com, the email address listed on the boat's Bill of Sale and insurance policies. De La Cruz Decl., Exh. D; Reply, Exh. A. Wienold acknowledges that he uses this email address, but only for online junk mail, and argues that he did not receive the email because he does not check the account regularly. Wienold Decl. ¶¶ 8–10. The second letter was also mailed to the BCW Partners' principal mailing address (according to the Illinois Secretary of State corporate records) in Lake Zurich, Illinois, but Wienold contends that this is the address of Michael Chernick, another member of BCW Partners, and Chernick did not notify him of the mail. Mot. to Dismiss, Exh. C; R. 21-4, Reply, Exh. D; Wienold Decl. ¶¶ 6–7. Lastly, the second letter was emailed to mwienold@gmail.com, but Wienold argues that he does not have the password to that email account and has not used it in the last two years. Mot. to Dismiss, Exh. C; Wienold Decl. ¶¶ 11–12. So Wienold and BCW Partners—relying on no precedent interpreting the Limitation of Liability Act—argue that Wienold had to have actually read the letters for the letters to start the six-month clock for filing a complaint. Pls.' Resp. at 9–11.

Ultimately, it does not matter whether there is a substantive difference between "gives" notice and "receipt" of notice, because the delivery of the two letters to

15

the Prospect Heights and Lake Zurich addresses and to the two email addresses satisfied both the statute's requirement to "give" notice and Rule F's requirement of "receipt" of a claim in writing. Although the Seventh Circuit has not interpreted the meaning of "give" and "receipt" under the Limitation of Liability Act, the Seventh Circuit has done so in other contexts, rejecting arguments analogous to those advanced by Wienold and BCW Partners that a party must have actually read a notice for it to be given or received. For example, Rule 4(a)(6)(A) of the Federal Rules of Appellate Procedure sets the time to file an appeal once the moving party "receive[s] notice." Fed. R. App. P. 4(a)(6)(A). In *Khor Chin Lim v. Courtcall Inc.*, a party argued that a document "is not 'received' until the envelope is opened and the contents read" under Rule 4(a)(6)(A), but the Seventh Circuit held: "[d]elivery to the address on file (the litigant's, or the litigant's lawyer's if the litigant is represented by counsel) is the *normal meaning of receipt in law*. No authority of which we are aware holds that a litigant may defer 'receipt' of a document by failing to open the envelope containing it. Quite the contrary, this circuit recently rejected just such a contention." *Khor Chin Lim v. Courtcall Inc.*, 683 F.3d 378, 381 (7th Cir. 2012) (citing *Ho v. Donovan*, 569 F.3d 677 (7th Cir. 2009)) (emphasis added). Similarly, in the context of Title VII claims, the statute provides that civil actions must be filed "within ninety days after the *giving of notice*" and the implementing regulations state that the window starts upon the claimant's "*receipt*" of the agency's decision. 42 U.S.C. § 2000e-5(f)(1) (emphasis added); 29 C.F.R. § 1614.407(a) (emphasis added). The Seventh Circuit has held "that receiving the notice via traditional mail, without opening or reading that

16

notice, is sufficient to trigger the beginning of the filing period," interpreting both the statute's and regulation's language. *Lax v. Mayorkas*, 20 F.4th 1178, 1182 (7th Cir. 2021) (citing *Threadgill v. Moore U.S.A., Inc.*, 269 F.3d 848, 849–50 (7th Cir. 2001)). In the absence of Seventh Circuit caselaw interpreting the Limitation of Liability Act, these decisions are instructive for the meaning of giving and receiving notice under the Act.

Here, Vargas sent a letter not once but twice, to two mailing addresses and two email addresses. These contacts were listed on official records about Wienold's ownership of the boat—its Bill of Sale, registration, and insurance policies—and adequately gave notice of Vargas's claim. Indeed, all of the records were ones that Wienold himself had a hand in generating. By failing to update the address for his boat's registration (as required by Florida law, Fla. Stat. § 328.64) or forward his mail because of his asserted move from the Prospect Heights address, Wienold assumed the risk that he would miss important communications. So Vargas gave, and Wienold and BCW Partners received, written notice of Vargas's claim on March 29 and June 20, 2023. The federal complaint, filed on October 15, 2024, was not timely filed within six months of either date.

## IV. Conclusion

Because the Complaint was not filed within six months of the notice of the claim, Vargas's motion to dismiss is granted. The Complaint is dismissed with prejudice.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: December 30, 2024

18